ALBERT BUSHNELL *vs.* PROPRIETORS OF THE ORE BED IN SALISBURY.

The plaintiff had formerly conveyed to the defendants, an ore company, the right, in washing their ore upon a small stream that ran through his land, to discharge dirt upon his "meadow lot," lying below upon the stream. A great quantity of dirt accumulated on the meadow lot, filling the bed of the stream and raising the lot above the adjoining land, so that the dirt washed upon the lot spread, and was carried upon the plaintiff's pasture lot adjoining. The plaintiff had owned this lot at the time the deed was given. Held, that the defendants were not liable for any damage to the pasture lot resulting naturally from the discharge of dirt upon the meadow lot.

A grantor is presumed to intend to convey every thing necessary for the reasonable enjoyment of the thing granted, so far as it is in his possession.

Where a deed was given under an award requiring it, it was held that this was not a sufficient reason for departing from the ordinary rule of construing its language most strongly against the grantor.

ACTION on the case for damage to the land of the plaintiff, from slacks and dirt washed upon it from the ore works of the defendants ; tried to the jury in the superior court, upon the general issue, with notice of the defense below stated, before *Seymour, J.*

The defendants claimed the right to discharge the slacks and dirt from their works upon the land of the plaintiff, under an award formerly made between the plaintiff and themselves on the subject, and under a deed conveying to them the right given by the plaintiff in compliance with the award, and on

the trial offered in evidence the submission, award and deed. The submission was as follows :—

" This agreement between the Proprietors of the Ore Bed in Salisbury and Albert Bushnell, witnesseth :—that said parties have agreed to submit the matter in controversy between them in relation to the damage claimed by said Bushnell to have been sustained by him by the washing of ore by said Proprietors at their ore bed in Salisbury, and the discharge of slacks into a stream of water that runs through the meadow and land of said Bushnell, to the arbitrament and final award of Richard Smith, Robert N. Fuller, and William H. Walton, who are to notify and meet the parties as soon as may be convenient, at the public house in Lakeville, and shall examine the land of said Bushnell, on which it is claimed damages have been sustained, which lies on both sides of the highway leading from Josiah M. Reed's to said Bushnell's dwelling house ; and they shall assess such damages in favor of said Bushnell as they shall find he has sustained since the last payment made to him by said Proprietors ; and shall also assess, as near as may be, such damage as shall accrue to said Bushnell in the future by a continuance of washing ore by said Proprietors, and the necessary discharge of slacks into said stream in the ordinary manner of washing ore, and by the floating or carrying of dirt, slacks and particles of ore upon said land ; and upon the payment by said Proprietors to said Bushnell of the damages assessed, it is agreed that said proprietors and their successors shall forever stand discharged of all further claim for damages, past and future, occasioned, or that may be occasioned, by the washing of ore by said Proprietors.

" And the said Bushnell hereby agrees that said arbitrators shall have power to order the execution by him of such lease, leases, releases or instruments, as in their judgment may be necessary to protect the said Proprietors and their successors from and against any future claim for damages for future injuries to said lands that may be made by said Bushnell, his heirs or assigns, in consequence of a continuance by said Proprietors and their successors of the business of washing ore in

said stream, and the carrying of dirt, slacks and fine ore on to said lands of said Bushnell before described ; and, upon the payment or tender of said damages, said Bushnell hereby agrees and binds himself to execute, with all due solemnities, any such leases, releases or instruments as said arbitrators may prescribe.   Witness the said parties, this third day of June, 1858.''

The material part of the award was as follows :

" That the aforesaid Proprietors pay or tender to said Bushnell the sum of $650, within thirty days from date, and that said Proprietors shall stand acquitted and discharged from any and all damage that has occurred in time past, or which shall occur in time to come, to said Bushnell, by a continuance of washing ore by said Proprietors, and the necessary discharge of slacks, dirt, and particles of ore into the stream of water mentioned in said submission, in the ordinary manner of washing ore and by the floating or carrying of said slacks, dirt and particles of ore into and upon the lands of said Bushnell, mentioned in said submission.   And we do also award that the said Bushnell shall execute and deliver, without unnecessary delay, to said proprietors, the following instrument, which is hereunto annexed.   Dated this 8th day of July, 1858.''

The material parts of the deed, which was executed on the same day that the award was made, were as follows :—

" To all people, &c.   Know ye that I, Albert Bushnell of the town of Salisbury,    *    *    *    *    do give, grant, bargain, and sell unto the Proprietors of the Ore Bed in Salisbury aforesaid, their successors and assigns forever, the right to wash iron ore at their ore bed in said Salisbury, in that certain stream of water which flows from said ore bed through the lands of Newton I. Reed, and near to the Chatfield ore bed, into and through that certain lot of land lying on the west side of the highway leading from Josiah M. Reed's dwelling house to my residence in said Salisbury, containing about six and one-half acres ; also into and through that certain other lot of land lying directly opposite the before mentioned lot of land, and on the easterly side of said highway, called my home meadow, containing about fifteen acres ; with the right and privilege to

discharge, float or carry slacks, dirt and particles of ore into and upon said parcels of land, which may accrue, float or be carried in said stream of water and discharged on said lands, from and by the ordinary mode and manner of washing iron ore in said stream, by said Proprietors of the Ore Bed in Salisbury aforesaid; and also the right to use the engine, or a similar one in operation, for the purpose of discharging water with the dirt and slacks therein. To have and to hold the before mentioned rights and privileges unto the said Proprietors of the Ore Bed in Salisbury, their successors and assigns forever. And also I, the said Bushnell, do for myself, my heirs, executors, administrators and assigns, covenant to acquit and discharge said proprietors, their successors and assigns, of and from all damages and injuries which have been or which hereafter may be done, in and upon said parcels of land, by the washing of iron ore in said stream, in the way and manner aforesaid, and of the carrying, floating and discharging of dirt, slacks and particles of ore into and upon said lands in consequence of said washing of ore as aforesaid. * * And it is further understood, that the said Bushnell shall not be compelled to open ditches on said lands to carry said particles of ore and slacks through said lands, but the said Bushnell shall be permitted to allow said slacks and particles of ore to go and flow upon said lands where they are inclined to go and where the water may take them. Nor is it understood by this instrument that the said Bushnell shall be liable to pay damage for said slacks and particles of ore, if they go and are carried upon the highway, or upon lands of adjoining proprietors."

The defendants contended that they had washed ore in the stream only in the ordinary manner, and so had done only what by the foregoing award and deed they had a right to do. The plaintiff admitted that the defendants had washed ore only in the ordinary mode and in accordance with the requirements of the award and deed, but claimed to recover for damage done to a piece of land known as the "pasture lot," not described in the instruments, and as to which he claimed that no rights were given to the defendants, which adjoined the

" meadow lot " described in the instruments, and upon which slacks and dirt spread and were washed from the meadow lot, on which they had accumulated in a very great quantity, filling up the bed of the stream and raising the meadow lot above the adjoining land, so that the dirt washed upon it passed over upon the adjoining land.   This lot was owned by the plaintiff when the deed was given.   He also claimed that the defendants were liable for damage done to the " home meadow " by dirt washed upon it by the stream, from deposits of dirt made by the defendants on the banks of the stream near their works.   The defendants denied that any damage had been done in the mode last stated, and requested the court to charge the jury that they were not liable for any damage done to the pasture lot in the manner claimed.   The judge did not so instruct the jury, but charged them *pro forma*, that the award and deed did not justify the defendants in washing slacks and dirt upon the pasture lot, subject however to this qualification, that they were liable only for the natural and necessary injuries resulting to the pasture lot, and that the plaintiff could not recover if by the use of ordinary and reasonable care he might have confined the dirt and slacks to the meadow lot, and thus have prevented injury to the pasture.

The jury were requested by the court, if they should find for the plaintiff, to assess by itself the injury they might find, if any, done to the pasture lot by washing ore; but the jury found a general verdict for the plaintiff.   Before the acceptance of the verdict the court inquired if they assessed anything for damage to the pasture lot, to which the jury replied that the whole amount of their verdict was for damage done to the pasture lot, and that they could not agree in finding any damage except to that lot.

The defendants moved for a new trial for error in the charge of the court.

*Hubbard* and *Peet*, in support of the motion.

The submission and award are to be taken with the deed in determining the construction of the latter.   The submission and award show clearly that it was the intention of the parties to

provide against all future controversy with regard to any damage that might be caused by the washing of dirt and refuse matter upon the plaintiff's land, and to secure to the defendants the full use of the stream for the discharge of such refuse matter. But independently of the submission and award, the deed taken by itself gives the defendants all the rights necessary for their justification in this case. The deed is to be construed most strongly against the grantor. The fact that it was given under an award does not make it any the less the grantor's act. He voluntarily submitted to the arbitrators the question whether he should give such a deed, and they had no power to order it except by his consent thus given. If construed as ordinary deeds are construed, it will be held to pass to the grantees, as incident to the principal thing granted, whatever is necessary to the full and reasonable enjoyment of the thing granted. The liability of the dirt as it accumulated on the meadow lot, to pass over upon the adjoining land, was well known to the plaintiff when he gave the deed, and it is obvious from the provision in the deed that the plaintiff was not to be liable for the damage to adjoining lands, that he had this risk in mind. He owned this pasture lot when he gave the deed, and could have made some provision for its protection if he had chosen to do so. As it is, he can not deny to the defendants the privilege, which is expressly given, of discharging dirt upon the meadow lot, and. so long as they do only this they are not liable for the incidental injury resulting to his adjoining land. The finding of the jury, that no damage was done except to the pasture lot, is equivalent to a finding that no damage was done by the washing down of dirt from the heaps deposited by the side of the stream, and that all the damage resulted from the washing of ore in the ordinary mode.

*Buel* and *Warner*, with whom was *Granger*, contra.

The charge of the court was right. The defendants acquired by the deed the right to wash dirt upon certain specified and described lots of the plaintiff. A servitude was created upon those particular lots. In the pasture lot they

acquired no right whatever unless by implication. But how can the right to cover the meadow lot with dirt imply also the right to cover the pasture lot ? It is clear that in award-ing compensation for the land to be covered the arbitrators estimated merely the two lots specified in the award. It can not be presumed that the plaintiff gave up all his land to the defendants. If it be said that the flowing of the pasture lot is necessary to the reasonable use of the meadow lot, we reply that it can not be so, since the defendants need not have filled the meadow lot so full, or might easily have kept a channel open through it for the stream. If they could not do this they should have secured the wash from overflowing upon the ad-joining land in some mode. It was not reasonable to require the plaintiff to do this. He had received no compensation for this expense, and the jury have found that he could not have confined the wash to the meadow lot by reasonable and ordi-nary care. The defendants had a right to use the meadow lot for their dumping ground, but this gave them no more right to occupy the adjoining ground than in any other case of such an easement in a specified piece of land. They had a right to put all they pleased on that lot, but they had no right to put it any where else. If they had had a right to cart the dirt upon that lot they would have had no right to pile it so high that it would tumble or wash upon the adjoining land.

As to the construction of the deed : It is not a case for the application of the ordinary rule that the construction is to be most strongly against the grantor. The deed is to be taken in connection with the award, and in that connection is to be re-garded rather as a judicial instrument than as the mere volun-tary act of the party. The deed is not only required by the award, thus making it compulsory on the plaintiff, but the very language of it is prescribed by the award. The arbitra-tors award that the plaintiff shall execute this precise deed, which is annexed to the award and made a part of it. Thus the ordinary reason why the language of a deed shall be taken most strongly against the grantor, viz., because it is his own language, voluntarily chosen by him, does not apply here. It is like the case of a decree in chancery, which is not to be re-

garded as the language of the party against whom it is made, but of the court.

DUTTON, J.   The principal question in this case is, what right the defendants acquired, by a certain award and a deed given in pursuance thereof, to float dirt, slacks and particles of iron ore upon the land of the plaintiff.   The submission, award and deed, are fully detailed in the motion.   It has been claimed by the counsel for the defendants that the right conferred on them by the award is more extensive than that specified in the deed, but the view which we take of the case renders it unnecessary to see whether there is any such distinction, or what would be the effect of it.   The deed conveys the " right and privilege " " to discharge, float or carry slacks, dirt and particles of ore into and upon said meadow, (and the lands described,) which may accrue, float or be carried in said stream of water and discharged on said lands, from and by the ordinary mode and manner of washing iron ore in said stream by the Proprietors of the Ore Bed in Salisbury." It is admitted that the plaintiff owned the pasture lot on which he claims the injury was done when he gave the deed, and that it lies adjoining the meadow, that so far as this question was concerned the defendants washed their ore in a proper manner, and that the injury to the plaintiff's pasture resulted from the flow of the water, surcharged with the result of the washing, from the meadow upon the pasture land.   The plaintiff insists that he conveyed only the right to deposit the particles of dirt, &c., upon the meadow.   This is denied by the defendants.   The question for us to decide is, what right was in fact conveyed.   The construction of the deed, if it is doubtful, must be taken most strongly against the grantor.   We do not think it partakes sufficiently of the character of a judicial deed to vary the construction.   The language of the deed is apparently that of the grantor.   It does not appear that he objected at all to the terms of it.   At all events the award would of it itself convey quite as full a right as the deed does.

In civil as well as in criminal matters, men are presumed

to intend the probable consequences of their acts.   A grantor is presumed to intend to convey, so far as it is in his possession, whatever is necessary to the reasonable enjoyment of the thing conveyed.   It is well settled law that if the owner of a lot conveys it to another person while there is upon it a dwelling house with windows opening upon another lot of the grantor, neither he nor his heirs or assigns can erect a building upon the second lot so near as to exclude the light from the dwelling house.   *Roswell* v. *Prior*, 6 Mod., 116.   *Story* v. *Odin*, 12 Mass., 157.   In such a case the deed conveys a privilege extending beyond the limits of the lot conveyed, although not named in the deed.

If *A* should grant to *B* the privilege of ponding his land up to a given line, it would not be contended that *A* would have a right of action against *B*, although the ponding should render his adjacent land marshy and less valuable.   We think the principle involved in such cases is applicable to the present case.   The defendants clearly had the right to make the water of the stream flow and leave deposits all over the meadow.   But it manifestly would not all remain on the meadow, unless confined there by some artificial embankment, which the defendants were not bound to make and would have no authority to make.   The parties must therefore have contemplated such a result as has in fact followed the flowing.

The submission furnishes evidence that if the plaintiff had intended to reserve a right of action for this unavoidable flowing of his pasture lot, it would have been provided for.   It speaks of damage claimed by the plaintiff to have been sustained, and provides for such as should accrue, showing that the parties intended to put an end to all further dispute or controversy.   Why should they do this and still leave room for further difficulty ?

The deed also guards against any liability on the part of the plaintiff, by reason of the flow of the water from the meadow land upon the land of other adjoining proprietors or upon the highway.   The fair inference is that the plaintiff had in mind the tendency of the privilege which he had granted to injure the

adjoining land. From his silence with reference to his own it is reasonably to be inferred that he intended to abide the consequences.

What has been said is not intended to apply at all to the right of the plaintiff to recover for whatever damage he can prove he has sustained, either in the meadow, pasture lot, or other land belonging to him, caused by the deposit of dirt, slacks, &c., which were not the result of the washing of ore in the ordinary manner.

It was claimed by the counsel of the defendants, that inasmuch as the jury did not find any damage outside of the pasture lot, it was virtually finding that no damage was done to the plaintiff's land except by the washing of ore in the ordinary manner, as they say that if any such damage had been done it would have first injured the meadow.

It is unnecessary to notice this claim, as a new trial must be granted for error in the *pro forma* charge of the judge, and the verdict being thus annulled can not be used for any purpose.

In this opinion the other judges concurred.