VAN RENSSELAER v. ALBANY AND WEST STOCKBRIDGE RAILROAD COMPANY, appellant.

*Easement — to maintain insecure structure — railway embankment.*

In 1859 an embankment of defendant's railroad slid down upon the land of plaintiff's father. At that time, for a valuable consideration, the father made an agreement in writing, that if " land slides shall hereafter occur from said embankment  *  *  *  I will make no claim for damages therefor, and that I will, and that my heirs, etc., shall, consider the money this day paid  *  *  *  compensation in full for all past and future damage, etc., in consequence of said embankment, and this instrument a bar to all future claim." *Held* (MILLER, P. J., dissenting), that an easement of this nature could be created by covenant, and that the instrument in question was a bar to a recovery for damages for slides from the embankment thereafter happening, by ordinary or casual negligence of defendant.

APPEAL from a judgment for plaintiff, entered upon the report of three referees.

The action was brought by Cornelius Van Rensselaer, to recover damage caused by the sliding of defendant's railroad embankment down upon plaintiff's land.

In 1859 the father of plaintiff was the owner of land through which defendant's road was built, on a steep hillside. The embankment for the road having slipped down upon the adjoining land, causing damage, such damage was settled between plaintiff's father and the defendant, in January, 1859, and a writing given by said plaintiff's father to defendant, under seal, first, releasing and discharging the defendant from such damage; and, second, as follows: "I do also, for the same consideration, and for myself, executors, administrators and assigns, hereby agree with said corporation, that if, in consequence of the peculiar construction of said embankment, or of the nature of the soil at the point where said embankment adjoins my land, land slides shall hereafter occur from said embankment, whereby earth or other material shall be deposited on my lot, that I will make no claim for damages therefor; and that I will, and my heirs and legal representatives shall, consider the money this day paid by said corporation compensation in full for all past and all future damages to my land, which has happened or may hereafter occur in consequence of said embankment, and this instrument a bar to all future claim." Plaintiff, upon the death of his father, succeeded to the title of his lands by inheritance, in 1868. In 1869, during a heavy storm, another slide from such embankment came down upon plaintiff's land, to his damage, for which this action was brought.

*George W. Miller*, for appellant.

*George C. Genet*, for respondent, cited, as to the contract running with the land, *Wolf* v. *Frost*, 4 Sandf. Ch. 72; Gale & Wheatly on Easm. 6, 7; *Bailey* v. *Appleyard*, 1 Nev. & P. 257; *Keppell* v. *Bailey*, 2 Myl. & K. 534; *Harsha* v. *Reid*, 45 N. Y. 419. As to release of prospective damages, 2 Pars. on Contr. 219, 220; *Edwards* v. *Varick*, 2 Den. 664; *Pierce* v. *Parker*, 4 Metc. 80.

BOARDMAN, J. If the instrument executed by plaintiff's father bars the plaintiff's right of action, it will not become necessary to consider the question of negligence raised upon the hearing. It

can scarcely be denied that such a burden as that contemplated in the contract can be imposed by grant upon one's realty.   It is very like a grant of the right of drip from eaves, or the right to flood lands, or to discharge water with or without refuse matter upon lands of another (*Bushnell* v. *Proprietors, etc.*, 31 Conn. 150), or of the right of support to the soil or buildings of one party by the property of another, or the right to change the course, impede the flow, or increase or diminish the quantity of water in a stream through adjoining lands.   All these are familiar cases of easements known and recognized by the law.   The right to maintain such embankment to the detriment or danger of adjacent land, was a right which plaintiff's father could convey to defendant, and by such conveyance deprive himself and his heir of any recovery for damages contemplated by the parties.   Such a grant would have created an easement upon plaintiff's land in favor of the defendant. It relates directly to the land; the right is a burden upon it.   The owner may thereby be deprived of the full use.   The land may be incumbered in a manner inconsistent with the general right of ownership in the plaintiff.   Nor is it in this view inconsistent with the case of *Keppell* v. *Bailey*, 2 Myl. & K. 517.   In that case the covenant was held to be personal, not running with the land nor binding assignees.   That case has not been overruled as a decision of the question before the court.   But certain *dicta* of the Lord Chancellor have been condemned and rejected.   The subject is very fully considered in *Spencer's Case* and the notes thereto.   1 Sm. Lead. Cases, part 1, 115; *Rowbotham* v. *Wilson*, 8 Ell. & Bl. 123 (92 Eng. C. L. R. 122); *Gibert* v. *Peteler*, 38 Barb. 488; S. C. (affirmed after new trial in court of appeals), 38 N. Y. 165.

It results from the cases that the owner in fee of land may impose upon it any burden however injurious or destructive not inconsistent with his general right of ownership, if such burden is not in violation of public policy and does not injuriously affect the rights or property of others.   But the instrument under consideration is not in terms a grant or conveyance, but rather an agreement or covenant not to sue for any damages thereafter occurring, in effect giving to defendant the right to the use of plaintiff's land as and when it should become necessary by reason of defects in the building up and sustaining of their track and embankment.   Upon such a construction of the contract no reason is apparent why the burden should not be imposed by the covenant, since by its nature

it could have been given by a grant. *Carr* v. *Lowry*, 3 Casey, 257; *Barrow* v. *Richard*, 8 Paige, 351; *Gibert* v. *Peteler* and *Rowbotham* v. . *Wilson*, *ante;* 1 Sm. Lead. Cases, 144, 165–6, 178–9, and cases there cited.

If we are right in holding that such a servitude can be imposed upon land and that when the nature of the charge is such that it might have been imposed by grant it is equally imposed by covenant, it follows that the covenant of plaintiff's father runs with the land and subjects the same in the hands of his son to all the consequences that would exist against the father. Such would be the case even against an assignee. *Holmes* v. *Buckley*, 1 Eq. Cases Abr. 27; *Norman* v. *Wells*, 17 Wend. 136.

The idea of a perpetuity in a vested right to maintain a negligent structure is well answered by the Lord Chancellor in *Keppel* v. *Bailey*, *ante*, wherein he shows that the principle of a perpetuity is not involved in the case.

Nor is there any thing in the novelty of such an easement, as suggested in the opinion of the referees, which should lead to its rejection. That such charges upon land have hitherto been unknown to the law or unnecessary in experience cannot destroy the power of creation. The arts and sciences are constantly developing new industries and new necessities for subjecting realty and population to strange burdens of a novel character. It is the province of the law to adapt itself to such wants. In this particular case it may be, and probably is, a necessity that defendant's roadway should pass along that side-hill, that the formation of such hill is such that an embankment cannot be built except at extravagant expense which shall be free from the chance of sliding down upon the lower land, that thus the defendant needed to own such lower lands or else the right to subject them to the possible injury from land slides from said embankment. What more reasonable than that defendant should desire to acquire such right, thus preventing plaintiff or his ancestor from making valuable improvements upon the lands liable to injury. What more natural than that the plaintiff's father should be willing to accept of a compensation for such risk, agreed upon between the parties, and still own and enjoy the ordinary use and profits to be derived therefrom. Such seems to have been the conduct of the parties. Though it may have become an unfortunate contract for the plaintiff, it cannot alter the result. The extent of the injury may be due to an indiscreet use and improve-

ment of the lands, in view of their exposure, a use not contemplated when the contract was made.

Entertaining such views after a careful examination and study of the law applicable to the case, it is unnecessary to discuss the subject of negligence as developed by the evidence. It is not claimed that such negligence, if it existed, was willful or permitted with any hostile or offensive purpose. It could not, therefore, furnish a ground for action in spite of and notwithstanding the covenant.

If the view taken of this contract be not correct the result must follow that the defendant acquired thereby nothing but a release and discharge arising from the damages caused in 1859. Such a construction would be a plain contradiction of the language and apparent intent of the parties to the agreement. It would leave to plaintiff the same right to recover for ordinary neglect that he would have had in the absence of the agreement. The defendant by the agreement and the consideration paid has acquired no right which the law did not give it without such an agreement.

Believing that this contract had a purpose beyond the mere settlement of the damages of 1859, and that such purpose is justified in the law as proper and legal, and that the effect of such contract is to exempt the defendant from liability for ordinary or casual negligence, I am of the opinion the judgment should be reversed and a new trial granted, costs to abide the event.

MILLER, P. J., dissenting. The question in this case is, whether the instrument executed by the father of the plaintiff, on the 20th of January, 1859, was a bar to a recovery.

By the instrument referred to, the plaintiff's father released all claims for damages by reason of any landslides from the embankment of the defendant, and agreed that if any landslides should afterward occur, that he would make no claim for damages, and that he and his heirs and representatives would consider the money paid by the defendant at the time of the execution of the agreement, in full for all damages to his land and a bar to all future claim.

I am inclined to think that the instrument executed by the plaintiff's father was not of such a character as to prevent a recovery under the circumstances presented, and I am brought to this conclusion, for the following reasons :

*First.* There was evidence, upon the trial, to show, and the referees found that there was negligence on the part of the defendant in allowing the embankment to remain in the condition in which it was at the time of the injury complained of, and had been ever since the agreement was executed.

Under ordinary circumstances there would be no question that the defendant would be liable for negligence even although the right to claim damages had been discharged.

The instrument, I think, does not relieve the defendant from such liability. Although it provides against damages in consequence of the peculiar construction of said embankment or the nature of the soil, it must be held, I think, to require of the defendant the exercise of reasonable care to prevent its sliding, and imposes upon the defendant the duty of guarding against negligence and carelessness.

Even if it may be considered as excusing the construction at the time when the agreement was executed, it cannot protect the defendant as the proof shows that after the writing was executed, no steps were taken to protect the embankment, the ditches being filled up, and the water being allowed to collect so as to affect the soil and cause it to slide.

*Second.* Even if the right claimed by the defendant may be considered as analogous to an easement, which I very much doubt, as no such easements have ever yet been recognized in land, I am inclined to think that the writing does not contain language which creates any such easement.

It does not, in appropriate phraseology, grant the privilege of allowing the embankment to slide on the land or create a servitude in regard to the land for any such purpose. It only provides for exemption from the payment of further damages, which is a personal covenant and nothing more.

*Third.* If an easement was properly created, with a covenant which bound the heirs and the land itself, it might be regarded as a covenant running with the land, and binding on the defendant for that reason. But there are no terms employed which invest it with any such character.

Although it may bind the party, or his lawful representatives, when a proper action is brought it cannot, I think, be obligatory upon the owner of the land as such. If the owner was a stranger without notice, and no instrument on record showing such a lien upon the land, clearly he would not be bound, and in principle, it

seems to me, that the heir at law takes the land without any other incumbrances upon it, except such as appear from instruments which show on their face an intent to bind the land, and clearly do so bind it.·

*Fourth.* I am inclined to think that a release of damages before they have occurred is not binding, because it is based upon some event which may never happen, and therefore is not a promise for a valid consideration. It is in mere anticipation of some possible future injury which is a mere naked possibility which can never be the subject of a release. *Edwards* v. *Varick*, 5 Denio, 691.

For the reasons stated, I am of the opinion that the judgment was right and should be affirmed, with costs.

*Judgment reversed.*