## GIBERT vs. PETELER and others.

Although a grantee of land be not shown to have had express notice of a restriction in respect to the use of the property, contained in previous deeds, yet if the conveyances under which he holds refer to the deeds in which the restriction is contained, and those deeds are recorded, he will be deemed to have had notice of the existence of such restriction in the original deeds, and of its consequences.

A covenant or agreement restricting the use of any lands or tenements in favor or on account of other lands, creates an easement, and makes one tenement servient and the other dominant; and this without regard to any privity or connection of title or estate in the two parcels, or their owners.

All that is necessary is a clear manifestation of the intention of the person who is the source of title, to subject one parcel of land to a restriction in its use, for the benefit of another, whether that other belong, at the time, to himself or to third persons, and sufficient language to make that restriction perpetual.

Where vendees have made expenditures upon the premises, not only in good faith and relying upon the performance of the agreement by their vendors, but in actual and direct compliance with their own covenants in that agreement, the vendor, who is unable to perform the contract by giving a good title, cannot recover the possession of the lands, without repaying those expenditures, to the vendees.

If a vendor is unable to make a good title to a portion of the premises, the vendees are entitled to elect whether they will rescind the contract *in toto* and receive back their expenditures under it, or will receive such a conveyance of the whole property as the vendor can give, paying him the price stipulated, less such deduction as may be just, for the defect.

If, in such a case, the vendees elect to rescind the agreement, *in toto*, they are entitled to be repaid the amount which they have expended in compliance with its terms, in permanent improvements; and that sum will be made a lien upon the premises, or its payment a condition to the surrender of the possession, or the recovery thereof by the legal owners.

But if the vendees elect to receive such a title as the vendor can give, with compensation for the defect, they have the right to ask for a judgment to that effect.

The vendor cannot recover the possession of the premises, until the vendees have had an opportunity to make their election, and have it complied with, either by the repayment to them of their expenditures, or by the payment of the sum which shall be fixed as the proper purchase money, upon a tender of a conveyance of the vendor's title.

Purchasers will not be compelled to take a part only of what they agreed to buy as an entirety.

The compensation for the deficiency, in cases where a performance is decreed in part, consists in an abatement from the price for the diminution in value

Gibert *v.* Peteler.

*of the whole property in consequence of defects or incumbrances, and not in a deduction of what may be supposed to be a proportionate part of the whole price for a part not conveyed at all, with a conveyance of the residue only.*

THIS action was brought to recover possession of a block of ground at New Brighton, Richmond county, and certain articles of furniture which the plaintiff, on the 3d day of March, 1858, contracted to sell and convey to the defendant Peteler, for the sum of $57,500. The contract provided for the execution and delivery of a deed, conveying a good and sufficient title to the premises, with general warranty and full covenants, on the first day of May, 1860, when the first installment of $7500 of principal was to be paid, and the balance was to be secured by bond and mortgage on the premises, payable in annual installments of $10,000 each; interest on the purchase money was to commence on the 1st day of May, 1858, and was to be paid semi-annually; the purchaser was to be allowed to enter into possession as soon as practicable; to insure and keep the building and premises insured, for the benefit of the plaintiff, in the sum of $20,000, and to improve the premises by building thereon permanent improvements, and expend thereon the amount of $20,000, within eighteen months, unless prevented by pestilence, and if so, then within one year thereafter. Mr. Peteler accordingly took possession of the premises, and he, or his assigns, within the prescribed period, had expended the required amount in permanent improvements. At the time fixed for completing the contract, the parties met for that purpose, when the defendants claimed that the property was subject to an incumbrance hereafter mentioned, of which the plaintiff was unable to procure the removal, and on this account they refused to take the title that was offered, but otherwise the parties were ready to perform the contract. Upon such refusal this action was brought, notice to quit waived, and the defendants allege, in justification of their refusal to surrender possession, their performance, and the failure of the plaintiff to perform the

contract, in consequence of his inability to remove or discharge the alleged incumbrance; and they claimed damages to the extent of $30,000 for the breach of the agreement, in case the plaintiff should recover back his property, or that the plaintiff be directed to convey to the defendants Hober and Hatzfield, (the assignees of Peteler's rights under the contract,) such title as he could make, with a just rebate from the contract price for any defect of title. The action was referred to three referees to hear and determine, who adjudged that, upon the facts found, there was a defect in the title as to a smaller part of the premises; that the plaintiff should convey the other unincumbered portion, with a proportionate rebatement of the purchase money, and that if the defendants, after notice, refused to accept those terms, the plaintiff should recover possession of the property. The defendants did refuse to accept the modified terms, and judgment was accordingly rendered for the plaintiff, as prayed for in his complaint. The incumbrance alleged to exist on the title to a part of the premises agreed to be conveyed, arises from the terms of a covenant contained in a deed in the chain of title executed by Edwin Bartlett and wife to Samuel M. Fox, dated October 30th, 1846, conveying a strip on the southerly side of the block. After the *habendum* to the party of the second part, (Fox,) his heirs and assigns for ever, was contained the following provisions: "And the said party of the second part, for himself, his heirs, executors, administrators and assigns, doth by these presents covenant and agree to and with the said Edwin Bartlett, his heirs and assigns, that neither said party of the second part, nor his heirs nor assigns, shall or will, at any time or times hereafter, build, erect, or construct, or suffer or permit to be built, erected or constructed, any house, building or structure of any kind whatsoever, upon any part of the premises hereby conveyed, whereby or by reason whereof the view or prospect of the bay from any part of the dwelling house of John C. Green, otherwise known as that of George Griswold, situated on the southerly side of

Gibert *v.* Peteler.

Tompkins avenue, can, shall or may be obstructed, injured or impaired in any manner or degree whatsoever, unless the said John C. Green, his heirs or assigns, &c. shall previously obstruct, injure or impair the said view or prospects, by building on any other part or parts of the ground now attached to the said dwelling house ; and in case of any breach of this covenant, the land hereby conveyed shall be forfeited to the said party of the first part, his heirs or assigns, for the use of the said John C. Green, his heirs or assigns."

It appeared that John C. Green purchased these premises from Thomas E. Davis, and at his request the deed was taken in the name of Edwin Bartlett. No instrument was executed by Mr. Bartlett declaratory of any trust in favor of Mr. Green. Bartlett afterwards executed the conveyance to Fox by Mr. Green's direction. Fox afterwards conveyed the premises to Theodosius O. Fowler subject to this covenant, and Fowler covenanted on his part to fulfill and perform the covenant. Fowler conveyed the premises subject to this covenant to Victor Forgeaud, who also entered into a like covenant with his grantor. Forgeaud at the same time procured a general release and quit-claim of the premises from John C. Green and others, which contained this limitation, "but not intending to affect the restriction as to obstructing the view from the dwelling house of John C. Green," *habendum* in fee, but with a proviso that nothing therein contained "should be deemed or construed as waiving, or in any manner evading the rights of John C. Green, as to the obstruction of the view from his dwelling house, as set forth in the condition, covenant or reservation contained in the deed from Bartlett to Fox."

John C. Green afterwards, by another deed to Forgeaud, reciting the covenant in the deed from Bartlett to Fox, and that he was the person for whose benefit the restriction or covenant was made, released the part of said premises covered by a stone cottage, with a proviso that nothing therein contained should be so construed as to impair his rights, "or the

operation of the said restriction or covenant as relates to the rest and residue of the said premises," as contained in the deed from Bartlett to Fox. Forgeaud conveyed the premises to August Belmont subject to the same covenant, and Belmont covenanted with his grantor to keep and fulfill the covenant in the deed from Fowler to Forgeaud. Belmont conveyed the premises to Cornelius Vanderbilt, who also covenanted to keep and perform the covenant to be kept and performed by Fox. Vanderbilt conveyed the same premises to Victor De Launay, without covenant or condition touching this restriction or reference thereto, except that for description the deed from Belmont was referred to. The premises have been since conveyed to the plaintiff by several mesne conveyances, none of which made any allusion to this restriction or covenant, a reference to the deed from Vanderbilt to De Launay being made merely for description of the premises granted. Neither party had any actual or other notice of the restriction at the time of entering into the contract of sale, except such as they might be chargeable with by reason of the recording of the deeds under which the title was derived. After the action was commenced, two payments of interest were made by the defendants to the plaintiff upon $50,000 of the purchase money, the last of which was stated in the receipt to be made and received without prejudice. The payments were credited by the referees in their judgment.

From the judgment entered upon the report of the referees the defendants appealed.

*Thomas Nelson,* for the appellants. The whole case is resolved into the general inquiry, whether the deed offered would have vested in the defendants that good and sufficient title which is called for by the terms of the agreement. There is no ambiguity in the language of the agreement, nor any reasonable doubt as to its legal requirements. (1.) The agreement calls not only for a deed with warranty and usual covenants, but the title *in fact* must be good and unincum-

Gibert *v.* Peteler.

bered, so as to vest an absolute title in fee, without conditions or restrictions in its uses. (2.) The title must not only be good *in fact*, but it must be free from *reasonable doubt*, and from *every cloud* resting upon its title. (10 *Hare*, 1. *Adams' Eq.* 258. 4 *Sandf.* 374.) As observed in the case of *Pyrke* v. *Waddington*, (10 *Hare*, 1,) and in *Adams' Equity*, 258, " The rule thus stated rests upon the fundamental principle, that every purchaser is entitled to require a marketable title." If either of these defects existed in the title, equity would not decree its specific performance; and if equity would not require its acceptance, the defendants were justified in their objections. (3.) The same result follows if the title is defective to *a part* of the premises contracted to be sold, though good as to the remainder. (*Adams' Eq.* 272. 1 *Meriv.* 26. 15 *Penn. Rep.* 429. 3 *Sim.* 29.) As observed in *Adams' Equity*, 273, " A purchaser cannot be required, against his will, to pay for any thing but what he has bought, nor to take a part only of the estate contracted for, where the other part is a large portion of the entire subject matter, or is in its nature material to the enjoyment of the rest." In some cases, where the title is defective to a part, equity will decree a compensation; but in no case will such compensation be decreed, where the part defective in its title is substantial or material to the purchaser's enjoyment, nor where it constitutes a large portion of the entire purchase. Thomas E. Davis held the absolute title in fee to the whole tract; the plaintiff claims his title, and covenanted to convey it to the defendants. 1. The deed of Davis and wife to Bartlett, September 25th, 1846, conveyed to him a good title to the east part of the lot. 2. The deed of Davis and wife to S. M. Fox, October 14th, 1846, conveyed to him a good title to the west part. 3. The deed of Bartlett and wife to S. M. Fox, October 30th, 1846, conveyed to him the east part, so that the entire premises became vested in Fox. This deed contains this provision: Fox covenanted with Bartlett, for himself, heirs and assigns, not to erect, or

suffer to be erected upon the premises, any structure or building of any kind, whereby the view or prospect of the bay from any part of the dwelling house of John C. Green shall be obstructed or impaired in any manner or degree whatever. In case of breach, the land is forfeited to said Bartlett for the use of said Green, his heirs and assigns. That provision is in the deeds of S. M. Fox to Fowler, May 9th, 1848; Fowler to Forgeaud, March 2d, 1850; Forgeaud to Belmont, December 31st, 1850; and of Belmont to Vanderbilt, February 12th, 1852. The provision is omitted in the deeds of Vanderbilt to DeLauney, May 15th, 1853, and of De Launey and others to Gibert, February, 1858. But for a description of the premises, express reference is made in all the deeds to the deed of Belmont to Vanderbilt. These parties are therefore chargeable with actual and constructive notice of that covenant and condition, at the time of their purchase. In making that provision, the parties intended to create a binding covenant, for the words of an express covenant are used; they intended to create a conditional estate, for a forfeiture is given for its violation; they intended to create a charge upon the land and to bind all parties to whom the premises should come to that qualified and restricted use and enjoyment, for they bound themselves, their heirs and assigns. This intention of the parties will be carried into effect by both legal and equitable principles. That covenant and condition is binding upon all the parties in the chain of title after the conveyance to Fox, and would have been chargeable on the land, and binding upon the defendants, if they had accepted the deed offered by the plaintiff. (1.) It is binding as a covenant real, running with the land. (2.) If the covenant is personal, and does not run with the land, it is binding, as they purchased with notice of the condition and covenant. (3.) It is binding as a condition, creating a defeasible estate. 1. It is a covenant real, running with the land, and is a charge upon those to whom it is conveyed, who stand in privity of contract or estate. ( 1 *Smith's Lead.*

*Cas.* 140. 3 *Cush.* 442. 2 *Comst.* 394.) In Smith's Leading Cases, 181, 140, it is said : " That whenever the relation of tenure is created by a grant, *all the covenants of the grantee for himself and his assigns, which affect the land granted,* will be a charge upon it, and bind every one to whom it may subsequently come by assignment ; with this difference, that while the benefit will pass with the land as its incident, its burden will only, when the relation of privity of estate or tenure, exist." That relation exists between Gibert and those under whom he claims, and would exist with these defendants, if they had accepted the conveyance. Covenants similar to this in character have been held in this state to run with the land as its incident, and are binding upon the assignee. (4 *Paige,* 510. 3 *id.* 254. 3 *Edw. Ch.* 96.) 2. But if the covenant does not run with the land, it is a charge upon it in the hands of those to whom it may be transferred, if they are *chargeable with notice* of the covenant at the time of their purchase. (*a.*) A purchaser of property from a trustee, with notice of the trust, is chargeable with the trust, and is himself trustee. So a purchaser of land, knowing that his grantor has qualified his ownership, or modified his right, shall be presumed to have contracted for it, subject to that modification, and that the consideration paid and accepted was affected by it. (*Tusk* v. *Moxay,* 11 *Beav.* 571. *Cole* v. *Sims,* 23 *Eng. L. and Eq.* 584. 2 *Parsons on Cont.* 512, *note.*) (*b.*) The record of the deeds containing this covenant, which are in the chain of the plaintiff's title, is notice to him and his grantees of that provision. At common law the delivery of the title deeds was notice of their contents. (*Berry* v. *M. Ins. Co.,* 2 *John. Ch.* 603. *Will. on Conv.* 121. *Hill. on Vend.* 255, 398.) (*c.*) The insertion of this covenant in several of the deeds, and the express reference to those deeds in the deeds where it is not inserted, is notice of the contents of those deeds, and of the covenant. (*Cole* v. *Sims,* 23 *Eng. Law and Eq.* 588.) 3. The provision is binding as a condition, creating a conditional and de-

feasible estate.   It was liable to be defeated, on the happening
of an uncertain event.   The parties have expressly provided
that the premises shall be forfeited by a non-compliance with
the terms of that provision.   In other words, that if the
premises are not used with that restriction, the right, estate
and interest therein shall no longer exist in the grantee under
his deed.   (*Co. Litt.* 203 *b.   Hill. on Vend.* 21, [8], 30,
[29].   *Will. on Conv.* 100.   *Co. Inst.* 203 *b.*)   It is insist-
ed by the plaintiff that, as a covenant or condition, it is
wholly inoperative and void; and that if the deed had been
accepted, it would have conveyed an absolute title in fee,
free from any restrictions in its use and enjoyment.   1. But
as a covenant or condition it is not void, as being reserved to
a stranger.   (*a.*) The reservation is made to Bartlett in the
deed to Fox, and in the subsequent deed to Forgeaud the
condition is made directly to Green, the grantor.   Bartlett
can enter for condition broken, and can seek his remedy
by injunction.   The right of Bartlett is not affected be-
cause of his conveyance of the land, nor for the reason that
he had no interest in adjoining premises.   (8 *Pick.* 290.
23 *Eng. Law and Eq.* 588.)   (*b.*) If the reservation had
been made directly to Green, it would have been equally
valid.   Equity will regard such conditions as creating a trust,
and will enforce it as such.   The premises were purchased
and paid for by Green, but the title was taken in the name
of Bartlett.   As a resulting trust it may be void under the
statute, but in his deed to Fox the trust is express for the
benefit of Green; and if Bartlett enters for condition broken,
he will hold as trustee for Green, and that trust equity will
enforce.   (1 *Smith's Lead. Cas.* 114.)   2. As a covenant or
condition it is not void, as being repugnant to the grant, or
inconsistent with its use; nor is it void for its perpetuity.
The premises may be used for any purpose, if the view of
the bay from Green's house is not obstructed.   It was pur-
chased by Fox for a lawn or garden, and the consideration
paid and received was for that restricted use.   Similar restric-

Gibert *v.* Peteler.

tions existed in the cases of *Cole* v. *Sims*, and *Tusk* v. *Moxay*, but the court found no difficulty in sustaining the legality of such provisions, though the grantor in each case had no interest in the premises or contiguous lots. (23 *Eng. Law and Eq.* 588. 8 *Pick.* 289.)

The plaintiff cannot sustain this action of ejectment, without first paying or offering to pay the defendants the damages they sustained by the non-performance of his agreement. (*a.*) The defendants were placed in possession of the premises under their contract of purchase; they have expended over $20,000 in permanent improvements, which by their agreement they were required and·compelled to do to entitle themselves to their deed, and to save the premises from forfeiture. These improvements *create a lien on the land*, and until repaid to the defendants, they are entitled to the possession of the premises. In *King* v. *Thomson*, (9 *Peters*, 204,) where repairs had been made by a party, under the belief and understanding that the premises were to be conveyed to him, but which was too uncertain to be specifically enforced, it was held " that he had an equitable lien on the messuage for his advances, as against the creditors of the owner, who died insolvent." This lien not only arises from contract, but is created in equity, upon principles of general justice, and extends to cases where the improvements were made *bona fide* and innocently, and a substantial benefit has been conferred on the owner. The same rule is sustained in 3 *Lead. Cas. in Equity*, 92 ; 29 *Barb.* 212; 1 *Story*, 478; 6 *Maryland R.* 418, 431; 2 *Story's Eq. Jur.* §§ 1234, 1237. When a lien is thus created, and possession of the premises has been taken under the contract of sale, equity will control the exercise of any legal right, and protect the parties in their possession of the premises, until they have been paid their damages and the money advanced for the improvements. In 2 *Hilliard on Vendors*, and *Gans* v. *Rinshaw*, (2 *Barr*, 34,) it is said that " *A vendee* is not bound *to restore possession*, and give up the contract before he can object to the title in an action

for the purchase money.   He cannot keep both the estate
and the price; but it is the vendor's business, if he finds he
cannot make such a title as the vendee is bound to accept, to
refund what has been paid, and bring an action of ejectment."
This is the rule in Pennsylvania, where the legal and equi-
table powers of the court are united, as in this state.   Until
that lien is discharged, therefore, this suit cannot be prose-
cuted.   (2 *Hill. on Vend.* 95, 157, 158.   2 *Story's Eq. J.*
§ 1237.   2 *Barr,* 34, 295.)   (*b.*) But if ejectment can be
sustained, and relief obtained the same as on a bill by the
vendor for specific performance, the defendants cannot be
compelled to accept a deed of part of the premises, and com-
pensation for the part defective in title.   It is not a case for
compensation.   The purchase was of the entirety, and in
such case the purchaser will not be compelled to take an un-
divided part of it.   The object and purposes for which the
purchase was made shows that the possession of the entire
purchase was regarded as material, and without which the
purchase would not have been made. . In *Story's Eq. Jur.*
§ 778, the rule is given, " That a party contracting for the
entirety of an estate will not be compelled to take an undi-
vided aliquot part."   The same doctrine was held in *Dalley*
v. *Pullen,* (3 *Sim. R.* 29.)   The Bartlett lot, which is defec-
tive in title, forms too substantial a part of the whole purchase ;
the deficiency is too great to be supplied by compensation.
It is only when a comparatively trifling adjustment is needed
to satisfy the equities of the case, that compensation can be
made.   (2 *Parsons on Cont.* 557.   *Sharkelton* v. *Sutcliffe,*
*De Gex & Smale,* 609.)   In *Jackson* v. *Ligon,* (3 *Leigh,*
161,) a want of title to 209 acres out of 698, was held to be
too great a deficiency to be supplied by compensation, al-
though the parcel of 209 acres was separated by a public road
from the residue, and all the buildings were on the latter.
(3 *Lead. Cas. in Eq.* 88.)   In that case, and in this, the de-
ficiency is nearly in the same proportion as to value, and still
greater in quantity.   (*See also* 4 *Sandf. Ch.* 525 ; 9 *Vesey,*

368; 1 *Sim. & Stu.* 190; 2 *Parsons on Cont.* 557.) In the above cases it was also held that a purchaser was not bound to take an estate of a different tenure from that bargained for— as a conditional or life estate, for an estate in fee, with compensation for the deficiency. If a decree for specific performance, with compensation for the part defective in title, will not be made where the purchase was for the entirety, and the part defective in title is material and substantial, and of a nature and tenure different from that bargained for, then there is manifest error in the decision of the referees in making such a decree. The referees state that the Bartlett lot is " not essential to the use and enjoyment of the other part." By that finding we are to understand that the other part may be used and enjoyed without the Bartlett lot; but that is far from finding but that the Bartlett lot is material and important in the use and enjoyment of the entire premises, and without which the purchase would not have been made. Without the fact so found, such specific performance, with compensation, will not be enforced, even in cases where it otherwise would be. (*Adams' Eq.* 272. 1 *Story's Eq. Jur.* § 777. 15 *Penn. State Rep.* 429. 2 *Parsons on Cont.* 557.) (c.) There is error in the decision of the referees, even if this is a proper case for specific performance with compensation. The defendants have a right to all the title which the plaintiff has to the premises; to that which is held subject to that condition, as well as that which is held in fee. If the court compel them to take the title, they will give them such title as the plaintiff has, and the rule of compensation will be the difference in value of the premises held under a conditional title or subject to that restriction, and its value under the absolute title in fee, as the plaintiff agreed to sell it to them. The referees say that a difficulty exists, if not an impossibilty, in making such valuation. That is a good reason why specific performance, with compensation, should not be directed, but no reason why property belonging to a purchaser under a contract of purchase, when its specific performance is

compelled, should be taken from him against his will and given to another, or the vendor be discharged from the .performance of his covenant, so far as he is able to do so. (*d.*) The principles governing the rights of the parties in this case are not difficult, and are of easy application. In *Story's Eq. J.* § 779, and in 3 *Lead. Cas. in Eq.* 72, *notes to Seaton* v. *Slade,* the rule is given: " That suits may be brought by the purchaser for specific performance, where the vendor is unable to complete a title to all the property sold. In such case, courts of equity allow the purchaser an election to proceed with the purchase *pro tanto*, or to abandon it altogether." The defendants have complied with all their stipulations, in order to obtain their deed of the premises; they ask the title, the whole title, and nothing but the title they purchased; a title which is good and marketable, free from reasonable doubt, and without restrictions in its use and enjoyment. The plaintiff is unable to procure such a title to a large proportion of these premises, which, in the purposes and object for which the purchase was made, the defendants regard as material and important in the use and enjoyment of the entire premises purchased. Rather than take a part, without the whole, they have elected to abandon their contract of purchase altogether, on repayment of the money advanced for permanent improvements. If the defendants had commenced proceedings to recover their damages, they should previously have offered to surrender the premises on payment of their lien for improvements; but when the plaintiff commences proceedings in ejectment to recover the premises, with all its improvements, he should first offer to carry the contract into effect *pro tanto*, with compensation for damages, or, at the election of the defendants, repay the money paid for improvements. (2 *Barr*, 295.)

If there is error in the decision of the referees in directing a specific performance of the agreement with compensation for that part of the premises defective in title, the remaining inquiry arises, what are the damages which the defendants

are entitled to recover if this suit can be sustained? (*a.*) Upon this complaint, and the defendants' answer, the defendants should be allowed the $20,000 paid for permanent improvements on the premises, with interest. This will be allowed on principles of general equity, whether called for by the agreement or not, if they were made *bona fide*, and in the belief that the premises would be conveyed to them under this contract of purchase. (9 *Peters*, 204. 29 *Barb.* 212. 3 *Lead. Cas. in Eq.* 92.) At law, in an action on a contract for a sale of real estate, it is held in this state, that the rule of damages is substantially the same as it is in the case of an executed sale, that the purchase money paid can only be recovered, and that repairs or improvements voluntarily made, uncalled for by the agreement, cannot be recovered. (*Fletcher* v. *Button*, 6 *Barb.* 646. *Peters* v. *McKeon*, 4 *Denio*, 546.) In *Pitcher* v. *Livingston*, (4 *John.* 19,) the rule, and the reason of it, is thus given by Ch. J. Kent: "Improvements made upon the land were never made the subject matter of the contract of sale, any more than its gradual increase or diminution in value. The subject of the contract was the land as it existed and was worth, when the contract was made." In this case the improvements were made the subject matter of the contract. The agreement required the expenditure in permanent improvements; it was made a condition of sale, as much as the payment of the purchase money. Whatever was paid as purchase money could be recovered, for the contract required its payment. This contract also required this expenditure for improvements, as much as the payment of the purchase money, to entitle the defendants to their deed, and to save the premises from forfeiture. The same rule which allows the recovery of the purchase money, will, for the same reason, sustain a recovery at law for their improvements. In claiming the money expended for improvements, it is not made as an adverse claim, but as an existing equity, which the plaintiff must discharge before he has any right or claim to the possession of the

premises.  (b.) But if the money advanced for those improve-
ments were regarded as an adverse claim, and should be re-
covered under adverse proceedings, it is then insisted that
they should be allowed, under the counter-claim set up in the
answer, and established in proof by the defendants in this
cause.  (Code, §§ 149, 150, 274, sub. 1, 2.  Dobson v. Pearce,
2 Kern. 165.  Blair v. Claxton, 18 N. Y. Rep. 529.)  The
form of the action, though it be ex delicto, ought not to af-
fect any rights to which the defendants are entitled under the
law of the land as applicable to the facts of the transaction.
(Xenia Branch Bank v. Lee, 2 Bosw. 694.)  The referees,
in their contingent allowances to the defendants for the value
of the Bartlett tract, have themselves recognized the principle
upon which the defendants base their right to counter-claim
for damages.  That is but one form for allowing to the de-
fendants their damages ; but as the defendants regard it with
disfavor, and they never assented to it, they are unwilling to
abide by this mode of making them compensation for the
plaintiff's violation of his contract.

The judgment is erroneous at all events in allowing a re-
covery of the personal property.  (20 N. Y. Rep. 147.)

H. W. Robinson, for the respondent.  I. The referees, by
their report and decision, have correctly found the facts, and
the plaintiff has been thereby awarded the possession of the
property, for the recovery of which this action is brought, and
obtained the very judgment which he prayed for.  Upon the
facts as found, he was, however, entitled to such judgment
upon a different ground from that assigned by the referees.
For this reason, independent of any other, the judgment
should not be disturbed.  (Munro v. Potter, 34 Barb. 358.)

II. The title which the plaintiff tendered to the defend-
ants, in pursuance of his contract of sale, was not subject to
any incumbrance, nor was it defective.  Upon well establish-
ed principles of law, it was free from any reasonable doubt as
to its validity on account of the covenant or provisions con-

tained in the deed from Bartlett to Fox, or any of the covenants or provisions in any of the subsequent deeds, and the defendant's refusal to complete the purchase, and still withhold possession, was unjustifiable. As well at common law as by force of our statutes, John C. Green never had any title or interest, legal or equitable, in the premises in question, nor had he any equitable right that was enforceable against them. 1st. The provision contained in the deed from Bartlett to Fox was not a *valid condition*, because apt words to create a condition were not used, nor was there any such reservation contained in the words of the grantor: the only attempt at restriction being contained in the covenant of the grantee. 2d. If the design is disclosed by this, or any of the subsequent deeds, to annex, as an incident to the property, the *covenant* of the owner limiting the right to build upon the property, in such a way as might obstruct the view from the house of John C. Green, such a reservation for the benefit of the property of John C. Green could not be made effectual by covenants between the grantor and grantee of the property in question, either as a *covenant running with the land,* or by way of an *easement reserved to or for the benefit of the property of a stranger,* or upon any other equitable principles. 3d. The grantor having failed to reserve any right in the property in question, either to his own use or for the benefit of any property in which he was interested, any attempt to impose a restriction in the deed upon the right of the grantee, for the benefit of other property in no way connected with it by privity of estate, would be to create a reservation in favor of a stranger, which would be repugnant to the grant, and equally void, either as a condition, covenant, or limitation, as if it had attempted to restrain the owner from aliening or committing waste, or occupying, planting, or improving, or requiring the payment of a sum of money to the grantor, upon any subsequent alienation. 4th. If any such restriction was imposed, it has, under the circumstances of this case, been discharged. (*a.*) The covenant contained

in the deed from Bartlett to Fox was not valid as a *condition*. To constitute a valid condition in a deed, it must be in the words of the grantor, by way of exception from the thing granted, and be contained in the *habendum* or granting part of the deed, and must not rest in the covenant of the grantee. (*Co. Litt.* 201 *a.* *Lord Cornwell's case,* 2 *Coke,* 71. *Com. Dig. tit.* 22, *chap.* 23, § 4. 2 *Greenl. Cruise,* 730. *Shep. Touch.* 124; 30 *Law Lib.* 239. *Perk. Conv.* 744. *Willard's Real Property,* 101. *Viner's Abr., Cond. D.* 3.) A laxer rule prevails as to leases for years, which are but contracts for the possession. (2 *Greenl. Cruise,* 731, § 9. *Shep. Touch.* 122, 124. *Co. Litt.* 104 *a.* *Keppel* v. *Bailey,* 2 *Myl. & Keen,* 517.) The provision in the covenant of the grantee, that "in case of any breach of this covenant the land conveyed shall be forfeited," was merely *in nomine pœna,* or a forfeiture *"in terrorem,"* for breach of covenant, and constituted no condition. (1 *Saund.* 387 *b, note* 16. (*b.*) But if otherwise, and the deed from Bartlett to Fox contains valid words of condition, they were inoperative in the present case, because, 1st. The condition could only reserve the right of re-entry to the grantor, in the same right and seisin as was his former estate. (*Shep. Touch.* 121. *Cruise Dig. tit.* 13, § 15. *Inhab. of Bangor* v. *Warren,* 34 *Maine R.* 324. *Nicoll* v. *N. Y. and Erie R. R. Co.,* 2 *Kern.* 121. 2 *Prest. on Cont.* 201. *Ives* v. *Van Auken,* 34 *Barb.* 566.) No instrument in writing was ever executed to John C. Green declaratory of any interest *in trust* for him, and he never had any title or interest, legal or equitable, in the premises conveyed by Davis and wife to Edwin Bartlett, by reason of his having advanced the purchase money, and procuring the deed to be made to Mr. Bartlett, under the *parol* understanding that the purchase was to be for his benefit, or otherwise. (2 *R. S.* 134, §§ 6, 7. 1 *id.* 727, § 1. *Id.* 728, §§ 49, 51. *Padgett* v. *Lawrence,* 10 *Paige,* 171. *Brewster* v. *Power, Id.* 569. *Bander* v. *Snyder,* 5 *Barb.* 63. *Lathrop* v. *Hoyt,* 7 *id.* 59. *Garfield* v. *Hatmaker,* 15 *N. Y. Rep.*

483.) The title by *reverter* "in trust for the use of said John C. Green, his heirs and assigns," as contemplated by this deed, and attempted to be reserved, was by force of § 51, 1 *R. S.* 728, different from that absolute estate which previously existed in the grantor. Under the provisions of 1 *R. S.* 728, § 49, changing the rule of the common law, this attempted "disposition" of the estate in the land would by the terms of the deed *eo instanti* vest the title in John C. Green or his heirs, the *cestui que trust*. (*Lagrange* v. *Lamoreux*, 1 *Barb. Ch.* 18.) Even at common law the intention to give the estate to John C. Green would, by such a declaration of *a use*, immediately vest the title by reversion in him as *cestui que use*. (*Burton's Real Prop.* 524. *Haggerston* v. *Hanbury*, 5 *B. & C.* 101.) The condition was not a general condition of re-entry, but a special condition of power of entry limited by way of *use*. (*Co. Litt.* 203 *a*, *note* 3.) Under the terms of this deed John C. Green or his heirs would alone have any right accruing from re-entry, but being *strangers* to the deed they could take nothing by it, nor could they enforce the right of re-entry. (*Doe* v. *Lawrence*, 4 *Taunt.* 23. *Co. Litt.* § 347, 131 *a*. *Cruise's Dig. tit.* 13, *ch.* 1, § 15. *Ch. of Brattle Sq.* v. *Grant*, 3 *Gray*, 142. 4 *Kent's Com.* 122, 125–7. *Storer* v. *Gordon*, 3 *M. & Sel.* 322. 2 *Bl. Com.* 154. *Nicoll* v. *N. Y. and Erie R. R. Co.*, 2 *Kern.* 121. *Hornbeck* v. *Westbrook*, 9 *John.* 75. *Pollock* v. *Cronise*, 12 *How. Pr.* 363.) 2d. There being no right or interest remaining in the grantor, the condition attempted to be imposed for the benefit of a third person was repugnant to the grant, and void as against public policy. It infringed the rules of law against perpetuities, by tending to impede the free circulation of the title to real property, and create embarrassments which were not only injurious to the possession, but tended to public inconvenience. A *reservation* by way of condition is only favored or tolerated when it is made for the benefit of the grantor, or of his other property, or for the use of the public, by way of dedication. (4 *Kent's Com.*

129–131. 1 *Jarm. on Wills*, 680; 819, *marg. Hobart*, 170. *Vin. Abr., Condition A.* [*a.*] *Newkerk* v. *Newkerk*, 2 *Caines*, 345. *Depeyster* v. *Michael*, 2 *Seld.* 493. *Negus* v. *Schermerhorn*, 1 *Denio*, 448. *Merrifield* v. *Cobleigh*, 4 *Cush.* 178.) The enforcement of this condition would prevent the erection of any useful building on the premises in question, and make the value of the lands in the hands of the grantee comparatively valueless. (*Depeyster* v. *Michael*, 2 *Seld.* 498.) The release executed by John C. Green (who had the whole beneficial interest) to Forgeaud of part of the premises from the operation of the condition, was a release of the whole right of forfeiture, although such may not have been intended; because the right of re-entry, given for a breach, was upon the entire premises originally conveyed on condition, and it could not be apportioned. (1 *Hill. on Real Prop.* 388.) (*c.*) The covenants of Fox, the grantee, in the deed from Bartlett, was not *a covenant running with the land.* Even if a right of entry existed, it was no reversion or other estate. (*Nicol* v. *N. Y. and Erie R. R.*, 2 *Kernan*, 121.) No privity of estate existed between the grantor and grantee. (*Osterhout* v. *Shoemaker*, 3 *Hill*, 518. *Depeyster* v. *Michael*, 2 *Seld.* 467. *Rawle on Cov.* 282; 2*d ed.* 334. *Averill* v. *Wilson*, 4 *Barb.* 180. *Bigelow* v. *Finch*, 11 *id.* 498.) And a covenant assuming to impose a *charge* upon the land of the covenantor, but having no relation to any estate or interest remaining in the covenantee, (whatever right it may confer at law on the person for whose benefit the covenant is created, as against the covenantor personally,) cannot be enforced against the grantees of the covenantor *as a covenant running with the land.* (*Smith's Lead. Cas. 5th Am. ed.* 123, 125, 140, 142, 176, 181. *Weyman's Ex'rs* v. *Ringold*, 1 *Bradf.* 57. *Parish* v. *Whitney*, 3 *Gray*, 516. *Plymouth* v. *Carver*, 16 *Pick.* 183. *Hurd* v. *Curtis*, 19 *id.* 459.) The utmost to which the courts have gone, in order to uphold any such a charge upon the lands, is where the grantor has by covenant *reserved* some *easement* or privilege out of the prop-

erty conveyed, for the benefit of, and as an appurtenant to, his other *unconveyed estate.* (*Smith's Lead. Cas. 5th Am. ed.* 143, 145. *Hills* v. *Miller,* 3 *Paige,* 256. *Barrow* v. *Richardson, Id.* 351. *Tusk* v. *Moxay,* 2 *Phil. Ch.* 774. *Cole* v. *Sims,* 23 *Eng. L. & Eq. Rep.* 584. *Whatman* v. *Gibson,* 9 *Sim.* 196. *Mann* v. *Stephens,* 10 *Jurist,* 650 *f;* 15 *Sim.* 377.) Or some mutual agreement exists for the improvement of property, (including that of the grantor,) according to some general plan which the covenant promotes, in which case any of the several persons parties to the agreement, or their grantees, may restrain its violation to their prejudice. (*Tallmadge* v. *East River Bank,* 2 *Duer,* 615. *Brouwer* v. *Jones,* 23 *Barb.* 153.) 2. Such a covenant, made for the benefit of a third person, or of his property, which is unconnected by title with land of the grantor, or with any such general plan of improvement, is *collateral,* and cannot be enforced by him against the land of the covenantor, or his grantees, either at law or in equity. (*Vyvyan* v. *Arthur,* 1 *B. & C.* 410. *Hornbeck* v. *Westbrook,* 9 *John.* 73. *Storer* v. *Gordon,* 3 *M. & S.* 322. *Addison on Cont.* 295, note *a.* *Co. Litt.* 385 *a.* *Allen* v. *Culver,* 3 *Denio,* 284.) 3. Although the covenant made by the grantee " for himself and his heirs, executors and assigns," may have evinced a general purpose thereby to bind the land for the benefit of *the land of a stranger,* such an intention was inconsistent with well established rules of law, and the means adopted were ineffectual to accomplish such an object. (*Doctor and Student,* 67. *Shep. Touch.* 86. *Fairbush* v. *Godwin,* 5 *Foster, N. H.* 425. *Hunt* v. *Rousmanier,* 1 *Pet.* 1.) The relations between the parties must be such as to render the intent effectual. (1 *Smith's Lead. Ca. 2d Am. ed.* 123.) 4. To give effect to such a covenant would be " a bold attempt to create new kinds of liability, and new species of estate." (*Keppel* v. *Bailey,* 2 *M. & K.* 517.) (*d.*) The several covenants of Fowler with Fox, of Forgeaud with Fowler, of Belmont with Forgeaud and of Vanderbilt with

Belmont, to perform the covenant of the grantee in the deed from Bartlett to Fox, were, for the same reasons, ineffectual to create any easement appurtenant to the land of John C. Green, and were nothing more than personal covenants, amounting to mere declarations that the property was conveyed subject to the legal force and effect of the covenant in the deed to Fox. (*King* v. *Whitely,* 10 *Paige,* 465. *Trotter* v. *Hughes,* 2 *Kern.* 78.) (*e.*) The conveyance of the property by Fox to Fowler, " subject" to that covenant, was not a recognition or affirmance of its validity, nor an assumption of any such liability. (*Wolveridge* v. *Stewar,* 1 *Crom. & Mees.* 644. *Belmont* v. *Coman,* 22 *N. Y. Rep.* 438. *Culver* v. *Sisson,* 3 *Comst.* 266.) (*f.*) Neither the assertion in the quit-claim deed from Griffin, Griswold & Green to Forgeaud, in reference to that covenant, that it was not intended to affect " the said restriction," nor to be deemed as waiving or evading the rights of John C. Green, " as set forth in the condition, covenant or restriction" contained in the deed from Bartlett to Fox, nor the recital in the release of the cottage from the covenant, executed by John C. Green to Forgeaud, that " the aforesaid restriction or covenant" was made and reserved for his (Green's) benefit, gave, nor were they intended to give, any additional force or effect to the covenant beyond what it already possessed. That it was *intended* for his benefit is very probable, but if he had any pre-existing right none of these instruments had any effect to affirm them, or to operate otherwise than as a release *pro tanto* to discharge any condition or obligation. The utmost that can be claimed to be matter of *recitals of fact* in these releases is, that the covenant was intended for the benefit of John C. Green; the other statements are conclusions of law as to the character or effect of Fox's covenant. (*Bigelow* v. *Finch,* 11 *Barb.* 498.)

III. The *condition* being void, and the covenant ineffectual, either as a *covenant running with the land* or *by way of reservation* of some easement, benefit or privilege to any

Gibert *v.* Peteler.

other land of the covenantee, there was no charge or incumbrance upon the land in favor of John C. Green which could be enforced upon any other equitable principle. The case repels any imputation of personal knowledge on the part of the plaintiff of any of these covenants, and particularly of the circumstances under which John C. Green had been concerned in vesting the title in Mr. Bartlett's name; but were this otherwise, his knowledge that the previous owner had attempted to create a burthen upon the land inconsistent with the nature of the property, and unknown to the rules of law, cannot bind him by affecting his conscience. (*Keppel* v. *Bailey,* 2 *Myl. & K.* 517.)

IV. This action was brought after the plaintiff had offerered to convey, and on the defendants' refusal to take, a title which (unless the matters before considered should be held to constitute an incumbrance or cloud upon the title) was unexceptionable. The defendants, after full knowledge of the supposed defect in the title, although refusing to accept a conveyance, still insisted on retaining possession. By their answer, they defend their possession and claim damages in case the plaintiff should recover back the property, or that the plaintiff should convey such title as he could make with a rebate from the contract price by reason of any defect in the title. This latter redress the referees afforded, but it not being accepted, the plaintiff was adjudged to have the right to recover possession. Upon discovery of the alleged imperfection in the title the vendees did not attempt to rescind the contract, but insisted on retaining possession of the property. Even if the title offered them was liable to any just exception, they had no right to hold on to the property and at the same time claim damages for an entire rescission of the contract. If they chose to rescind the contract, they ought to have surrendered possession. As they refused the equitable terms upon which the referees adjudged they might retain possession, the plaintiff was clearly entitled to the judgment awarded him. (*Wright* v. *Delafield,* 23 *Barb.*

498.   *Caswell* v. *Black Riv. Manuf. Co.*, 14 *John.* 453.  *More*
v. *Smedburgh*, 8 *Paige*, 600.)   1. They had no lien for
the improvements they had put upon the property.   2. No
such lien exists in any case on behalf of the vendee, unless
the vendor is insolvent.   (*Hill. Vend.* 424, § 15.  *Eyler* v.
*Crabbs*, 2 *Maryland Rep.* 154.  *Richardson* v. *Stilliner*,
12 *Gill & J.* 477.)   3. If it had existed, it would not have
conferred any right to retain possession.   4. The vendee
would only be entitled to recover such portion of the pur-
chase money as he had advanced, as if the sale had been *exe-
cuted*.   The improvements he put on the property were in
no sense part of the purchase money.   Had a deed been
executed the $57,500 would have been its actual consider-
ation, and so much of that sum as had been paid would be
the extent of damages recoverable upon any breach of the
agreement to convey, or of the deed after it had been exe-
cuted.   *Conger* v. *Weaver*, 20 *N. Y. Rep.* 140.   *Peters* v.
*McKeon*, 4 *Denio*, 546.)   5. No such right of lien is alleged
or sought to be enforced by the answer.

V. The referees made a disposition of the case presented
by the pleadings most favorable to the defendants.  Blend-
ing law and equity, they sustained their *defense of the
possession* upon the terms asked by the answer, by decreeing
a specific performance, and making what they regarded as a
just rebate from the contract price for the assumed inability
to give a good title.  The alternative relief prayed for, to
wit, their damages in case the plaintiff recover back said
property by reason of his inability or refusal to fulfill said
contract, &c., was not the subject of a counter-claim in an
action of ejectment, to try the possession-title which was
founded upon an alleged continuous *tort* or *trespass*.  (*Burns*
v. *Nevins*, 27 *Barb.* 493.)

*By the Court*, EMOTT, J.   The premises to which this con-
troversy relates consist of two parcels; one, the westerly
portion, designated in the report of the referees the Hotel

plat; the other, or easterly part, designated the Bartlett plat. There is no question of the ability of the plaintiff to convey a good title to the former of these. The two parcels were contracted to be sold together, however, and as one piece of land. They are not distinguished in the contract, but Gibert agrees to sell and convey to Peteler, lands in New Brighton lying between certain streets, and including all these premises. The plaintiff's title to the whole property is derived from one Fox. Fox obtained his title by two conveyances. One was from a person named Davis, dated October 14th, 1846, of the Hotel plat. This was an absolute deed, and conveyed a perfect and unqualified title. This Davis was originally the owner of the whole, and his title was absolute in fee. But on the 14th of September, 1846, before his deed to Fox, Davis had conveyed what was afterwards known as the Bartlett plat to Edwin Bartlett. The deed from Davis to Bartlett was absolute, like the other, and contained no restriction. But it appears that Bartlett took this title at the request of one John C. Green, who was the owner of certain adjoining premises which he desired to protect. Green advanced the purchase money, and Bartlett held the title for him, and subject to his direction, although there was no written evidence of the arrangement. On the 30th of October, 1846, Bartlett, at Green's request and by his direction, conveyed the strip of which he thus held the title to Fox, who was already, by Davis' deed, the owner of the residue. This deed of Bartlett contained a provision in the form of a covenant by the party of the second part, (Fox,) his heirs, executors, administrators and assigns, to and with Bartlett, his heirs and assigns, not to erect or permit to be erected at any time thereafter, on any part of the premises, any building whereby the view or prospect of the bay from the dwelling house of John C. Green could be obstructed or impaired, unless Green should first destroy his own prospect by building on his own lot. The deed added a clause of forfeiture in favor of Green in the event of a breach of this covenant. It

was not signed or executed by Fox. Fox afterwards conveyed to Theodosius O. Fowler, subject to this covenant and to an express stipulation by Fowler to observe it. Fowler conveyed to Victor Forgeaud, subject to the same covenant and stipulation. Forgeaud obtained also a release and quitclaim of title from Green, but with a clause preserving the restriction as to building, &c. At or about this time there was erected a stone cottage upon the Bartlett lot, and Green afterwards by a deed, reciting that he was the person for whose benefit the restriction was imposed, released Forgeaud from the restriction as to the land occupied by this cottage, but with a proviso that this should not remove the restriction or impair his rights as to the residue of the premises. After this, Forgeaud conveyed to August Belmont by a deed containing an express covenant on the part of Belmont to abide by the restrictions in the deed to Forgeaud; this latter deed, however, like the others, not being signed by the grantee. Belmont conveyed to Vanderbilt by a deed in similar terms. From Vanderbilt the title passed to the plaintiff by various mesne conveyances, none of which contained any express covenant or restriction, but all of which referred to the deed from Vanderbilt to his next grantee; which latter deed referred to the deed from Belmont to Vanderbilt which contained the restriction.

Although the plaintiff is not shown to have had express notice of this restriction, yet as the conveyances under which he holds refer to deeds in which it is contained, and these deeds are recorded, he must be taken to have had notice of the existence of such a restriction in the original deeds, and of its consequences.

John C. Green, in whose favor this covenant was made, may be admitted to be a stranger to the legal title, and probably not able to bring an action at law upon the covenant, against the plaintiff, or to enfore it as a condition divesting the legal estate, upon a breach. But the remedy in equity for the enforcement of such a restriction imposed upon land

by the owner, does not depend upon the existence of a concurrent remedy at law. The observations of Lord Brougham in *Keppel* v. *Bailey*, (2 *M. & K.* 54,) if intended to express such an opinion, are distinctly disapproved by Lord Cottenham in *Tusk* v. *Moxay*, (2 *Phil.* 774.) In this latter case Lord Cottenham granted an injunction in favor of a vendor, against a subsequent purchaser from his grantee, to enforce a covenant of that grantee as to the use of his own premises, which did not run with the land, and was not contained in the deed to the last purchaser. The case was placed distinctly upon the equity, which it was conceded might have been created as well by an agreement, as by a covenant, provided the subsequent purchaser had notice of it. In *Cole* v. *Sims* (23 *Eng. L. & E.* 384) the lords justices of appeal affirmed an injunction of the vice chancellor, in a case very similar to the present, upon the question of notice, and where also there was no remedy at law. So in *Whatman* v. *Gibson*, (9 *Sim.* 196,) *Schrieber* v. *Creed*, (10 *id.* 35,) and *Mann* v. *Stephens*, (15 *id.* 377,) similar agreements as to the use of property were enforced by injunction, in cases where there was no privity between the present parties, and no remedy at law. The principal cases in our own courts are referred to in *Brouwer* v. *Jones*, (23 *Barb.* 153, 160,) in which a covenant not to use certain premises in a particular way was enforced against a purchaser, in favor of a previous purchaser of lands in the same tract from the same grantor. This was upon the ground that the covenant was intended for the benefit of the owners of the whole tract, and created an easement or servitude in the lands conveyed as a servient tenement, which would be enforced at the instance of any owner of any part of the tract for whose benefit it was created. In the case of *Barrow* v. *Richard* (8 *Paige*, 351) the plaintiff and defendants were alike purchasers of lots in a particular tract from one Mercein. The plaintiff first purchased lot No. 11 in this block, and the defendants afterwards received conveyances of lots 12, 13. All the deeds contained covenants against cer-

VOL. XXXVIII. 33

tain uses of the lots. But the covenant or agreement in the plaintiff's deed would neither have created any legal liability against subsequent purchasers of the lots, nor any privity between them and the first grantor. Yet the chancellor fastened upon the language of the covenants in the subsequent deeds, which were expressed to be for the benefit of the "neighboring inhabitants," and held that every such deed created an equity in favor of all the owners of adjoining lots in the block. This case, as well as *Brouwer* v. *Jones* which followed it—and both I think are correctly decided—is important to show that the action of courts of equity in such cases is not limited by rules of legal liability, and does not depend upon legal privity of estate, or require that the party invoking the aid of the court should come in under and after the covenant. A covenant or agreement restricting the use of any lands or tenements in favor or on account of other lands, creates an easement and makes one tenement, in the language of the civil law, servient and the other dominant; and this without regard to any privity or connection of title or estate in the two parcels, or their owners. All that is necessary is a clear manifestation of the intention of the person who is the source of title, to subject one parcel of land to a restriction in its use for the benefit of another; whether that other belong at the time to himself or to third persons, and sufficient language to make that restriction perpetual.

The referees were correct in their conclusion in this case that the Bartlett lot was subject to an easement or servitude in favor of the lands of John C. Green, which was a defect or incumbrance upon the title, so that as to that part of the premises contracted to be sold, the plaintiff was disabled from giving the title which he had contracted for. The question now arises, what are the respective rights and obligations of these parties, under this state of facts. The present is an action of ejectment by the vendor against the vendee or his assigns who were in possession. The defendants having refused the plaintiff's title, cannot of course retain the posses-

Gibert *v.* Peteler.

sion of the premises as vendees. But they set up the facts of the contract and the title, and the plaintiff's inability to perform. They also aver that having taken possession under the contract, they expended in good faith a very large sum in permanent improvements, relying upon the plaintiff's ability to perform the contract and to make a good title. They ask a judgment for damages, or that the plaintiff be directed to convey such title as he may have, with a deduction from the contract price for the imperfection of his title. The answer does not indicate an election by the defendants between abandoning the contract altogether, and receiving a partial performance with compensation. The vendee in such a case has such an election, which he may indicate by the form of his action, or where, as in the present case, no objection is taken to the time or the mode of the election, he may be allowed by the judgment an opportunity to exercise it. The defense to the present action has the same scope and effect as a cross action, or suit in equity for performance of the contract, or for the appropriate remedies of the vendee under it, and should result in a similar judgment, upon a sufficient state of facts. The claim for compensation for the expenditures of the vendee is made in this answer in the form of a demand or counter-claim of mere damages at law for the non-performance of the contract. It is not, however, my intention to consider what would be the measure of damages in an action at law, for the failure of the plaintiff to comply with this contract, or to what extent such a counter-claim could be interposed in a suit like the present. The defense may properly be disposed of here in its equitable aspect. The answer asks, as I have already stated, for such a title as the plaintiff can make, with compensation for the defects, or for such other relief as the facts may justify. There is no dispute that expenditures were made by the defendants, as stated in the answer, in permanent improvements, in good faith and relying upon the performance of the agreement, to an amount of about $20,000. Whether such expenditures could be recov-

ered back of a vendor who had failed or been unable to make a perfect title, or whether they could be made a lien upon the premises, in a case where the expenditures were not specified or demanded by the contract, is probably an open question in this state. In *Putnam* v. *Ritchie* (4 *Paige*, 390, 404) the chancellor declined to make such an allowance for improvements in favor of a purchaser who had made his expenditures for the improvements in good faith, and supposing that he was the owner under a conveyance which turned out to be void. The chancellor refused to stay the enforcement of the legal title until compensation was made for these expenditures, intimating that his opinion would be different in a case where the legal title was in the person who had made the improvements in good faith, and the equitable title in another, who was thus compelled to resort to equity for relief, and would then be required to do equity himself. This case was disapproved by Judge Story in *Bright* v. *Boyd*, (1 *Story's Rep*. 478.)

There the owner of an estate was subjected to a deduction in favor of a bona fide possessor, in an action against the latter for rents and profits after a recovery upon a legal title, to the extent of the amount expended in good faith for permanent improvements. The case perhaps does not quite come up to the opinion upon the present point, since the suit was a bill in equity for an account of the rents and profits, and the maxim that he who seeks equity must do equity, might be directly applied, although the foundation of the suit was a legal title. In the case of *King* v. *Thomson*, (9 *Pet*. 204,) in the supreme court of the United States, the plaintiffs were the vendees, who filed a bill for specific performance, the legal title being in the defendants. The contract was proved, but it was indeterminate as to the person in whom the title was to be vested, or the conditions of the conveyance. The specific performance was therefore denied, but the vendees were allowed the benefit of their expenditures, and the premises were directed to be sold to repay them.

This case goes farther than the case before Judge Story, and can hardly be reconciled with the opinion of Chancellor Walworth.

There is however a feature in the present case which will distinguish it from those which have been referred to. The contract here called for and required the expenditures which the defendants have made. They have made expenditures not only in good faith, and relying upon the execution of the agreement by their vendors, but in actual and direct compliance with their own covenants in that agreement. Under such circumstances I cannot hesitate to hold, that the vendor who has been unable to perform the contract, cannot recover the possession of the lands, without repaying expenditures which were made under the stipulations of the agreement itself, by which possession was given, and for his security, if not for his benefit.

I am therefore of opinion that if the defendants elect to rescind this agreement in toto, they are entitled to be repaid the amount which they have expended in compliance with its terms in permanent improvements ; and that such amount should be made a lien upon the premises, or its payment a condition to the surrender or recovery of their possession by the legal owners.

If, however, the defendants elect to receive such a title as the plaintiff can make, with compensation for the deficiency, they have the right to ask for a judgment to that effect. The referees, by their judgment, directed that the portion of the premises which has been described as the Hotel plat, and as to the title to which no difficulty arises, should be conveyed to the defendants, and not the residue, and that a deduction of $17,760 with interest should be made from the contract price of the whole property, for the failure to convey the Bartlett strip. This however is not the performance or the compensation to which the defendants are entitled. The lands contracted to be sold to them were sold and to be conveyed as one parcel. However susceptible of division they

may be, and although they had been divided in the former history of the title, yet the purchase was entire, and the defendants are not to be compelled to take a part only of what they agreed to buy as an entirety. The compensation for the deficiency, in cases where performance is decreed in part, consists in an abatement from the price, for the diminution in value of the whole property in consequence of defects or incumbrances, and not in a deduction of what may be supposed to be a proportionate part of the whole price for a part not conveyed at all, with a conveyance only of the residue. There are indeed some cases to be found in the books of a partial performance decreed, by a conveyance of a portion only of the property and a consequent abatement of price, but they will be found to be cases where the premises sold consisted of distinct parcels, purchased separately, and having distinct prices. ( 2 *Sandf.* 298. 6 *John. Ch.* 38.)

The conclusions of the referees in this case as to the remedies to which these parties were entitled, were erroneous. The defendants are entitled to elect whether they will rescind the contract in toto, and receive back their expenditures under it, or will receive such a conveyance of the whole property as the plaintiff can give, paying him the price stipulated, less such deduction as may be just for the defect occasioned by the covenant in favor of John C. Green. The plaintiff cannot recover the possession of the premises until the defendants have had the opportunity to make their election, and have it complied with, either by the repayment to them of their expenditures, or by the payment of the sum which shall be fixed as the proper purchase money; upon a tender of a conveyance of the plaintiff's title.

The judgment is reversed and a new trial ordered at the circuit. The costs will abide the final direction of the court.

[KINGS GENERAL TERM, December 8, 1862. *Emott, Lott* and *Brown,* Justices.]